432 So.2d 260 (1983)
STATE of Louisiana
v.
Michael BOELYN.
No. 82-KA-0876.
Supreme Court of Louisiana.
May 23, 1983.
Rehearing Denied June 24, 1983.[*]
*261 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., Donald D. Landry, Asst. Dist. Atty., for plaintiff-appellee.
Hank Seldon Hannah, Hannah, Cook & Kaufman, Lafayette, for defendant-appellant.
LEMMON, Justice.
This is an appeal from a conviction of armed robbery and a 60-year sentence. The principal issues relate to the sufficiency of evidence and to the trial court's refusal to order the victim to produce income tax returns for use by defense counsel in cross-examination.[1]

I.
As the victim, Richard Lutes, and his wife returned to their home, they were confronted by at least five armed men (one of whom was subsequently identified as defendant) posing as police officers. The Lutes discovered that their son had already been taken hostage. They were handcuffed and forced at gunpoint into their home. Defendant ordered Lutes to "give up the drugs and the money". Using a gun and threats of harm, defendant forced Lutes to reveal the location of $15,000 in cash (in $100 bills) hidden in the bedroom. Additionally, the robbers took several firearms, including a pistol which was seized from Lutes' person. After obtaining the loot, defendant and his confederates absconded.
Defendant and five others were subsequently arrested and indicted for armed robbery. La.R.S. 14:64. Defendant's case was severed for a separate trial, and he was convicted by a unanimous jury. The judge imposed a sentence of 60 years imprisonment at hard labor.

II.
Defendant contends that no stolen money or weapons were ever linked to him, except by the testimony of a convicted drug dealer (Lutes). Although he admitted that he entered the house to obtain drugs, he contends that a rational jury could not have concluded on the basis of that evidence that he was guilty of every element of the crime of armed robbery.
Proof of the unauthorized taking of money and guns by the intruders did not consist solely of Lutes' testimony. Lutes' detailed description of defendant's actions in using a pistol to force him to turn over cash and a weapon was substantially corroborated by his wife and son, although they did not specifically see defendant remove any money or weapons from the house. Additionally, a coperpetrator who testified for the prosecution stated that defendant, after taking Lutes to another part of the house, had possession of a large sum of money, at least some of which was $100 bills.
The prosecution also corroborated the eyewitness accounts by presenting evidence that defendant's wife subsequently paid for automobile repair work with eight $100 bills and that guns stolen in the robbery were recovered from one of defendant's confederates.
The jury reasonably concluded that defendant actively participated in the theft of valuable property (guns and money), which was within the immediate control of the victim, and that defendant and his confederates, while armed with dangerous weapons, used threats of force and violence to intimidate the victim into relinquishing the property without a struggle. La.R.S. 14:64. Thus, the evidence was sufficient to support the jury's verdict of guilty of armed *262 robbery.[2] See State v. Gould, 395 So.2d 647 (La.1981); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); La.C.Cr.P. Art. 821.

III.
The trial court's refusal to grant defendant's request to compel the victim to produce his subpoenaed tax returns presents a more complex issue. Apparently, both the assailants and the local police suspected that the victim was involved in illegal drug trafficking. The evidence presented at trial indicated that the robbers were after drugs and money. Moreover, between the robbery and the time of defendant's trial, the victim was convicted of possession of controlled substances with intent to distribute. Defense counsel therefore concentrated his efforts on discrediting the victim and undermining the believability of his testimony in the eyes of the jurors.
During the trial, defense counsel questioned the victim extensively about his employment and income during the years before the robbery, as well as about his drug conviction. The victim explained that he had a large amount of cash in the house because he was planning a vacation trip and had brought home from his safety deposit box the savings accumulated over a 13-year period. This testimony was vigorously challenged by defense counsel.
In this case, we need not decide whether the trial judge erred in not ordering the production of the tax returns for the purpose of impeaching Lutes' testimony, because the source of the funds was not of controlling significance. The funds, even if obtained from illegal drug sales and not reported as income, clearly fell within the definition of "anything of value".[3] La.R.S. 14:2. Furthermore, unlike the crime of theft, the amount stolen is not important in the crime of robbery. Compare La.R.S. 14:64 with La.R.S. 14:67.
More importantly, defense counsel was given a full opportunity to question the victim about the amount of money allegedly on hand and about the circumstances under which that large amount of cash happened to be in the residence. The tax returns would have been only marginally relevant either for challenging further the presence of the money alleged by the state to have been among the valuables stolen from the victim or for further challenging the credibility of the victim.[4] Absent a particularized showing that the subpoenaed tax returns were necessary to assure effective cross-examination of the victim on issues relevant to defendant's theory of his case, we cannot say that the trial court's refusal to compel production requires reversal of the conviction.[5] Therefore, any error was harmless beyond reasonable doubt. State v. Gibson, 391 So.2d 421 (La.1980).
Defendant's conviction and sentence are affirmed.
NOTES
[*] Calogero, J. concurs with reason.
[1] Defendant's other contentions lack any arguable merit and are treated in an unpublished appendix, which is attached to this opinion and is part of the official record in this case.
[2] Whether defendant physically engaged in the actual taking of the guns or money (as opposed to directing a confederate to do so) is not important. The evidence clearly revealed his participation in the crime as a principal. La.R.S. 14:24.
[3] As noted, the evidence clearly established the theft of a pistol which was on the victim's person. The elements of armed robbery were therefore established, even if no funds were taken. La.R.S. 14:64.
[4] There is no allegation that the tax returns would have revealed evidence which was affirmatively exculpatory. Presumably, the returns would only have been useful in showing amounts of reported income, which might have raised an inference that (1) it would have been difficult for defendant to accumulate cash savings of $15,000, even over a period of 13 years, or that (2) the $15,000 was unreported income (and possibly the fruits of illegal drug sales). However, defendant's theory of the source of the funds was forcefully presented to the jury, and any additional probative value of the tax returns was not so significant as to prejudice the jury's determination of guilt or innocence.
[5] For an analogous discussion of courts' authority to order production of tax returns in civil cases, see Rhodes v. Edwards, 178 Neb. 757, 135 N.W.2d 453 (Neb.1965), Annot., 70 A.L.R.2d 244.