SEXTON, Judge Pro Tern.
Defendant, Randall Wayne Womack, Jr., was found guilty of both armed robbery and attempted armed robbery. He was subsequently sentenced to 50 years at hard labor for the armed robbery conviction and 15 years at hard labor for the attempted armed robbery conviction, with the sentences to be served concurrently. Defendant now appeals. For the reasons stated herein, Defendant’s convictions and sentences are affirmed.

FACTS

On September 17, 2010, Defendant and three other men, Dillon Murphy, Joshua Lopez and David Weeks, committed an armed and attempted armed robbery against victims Jose and Orlando Tecciau, respectively, at the victims’ home in Plain Dealing, Louisiana. While Lopez waited in the car, Defendant, Weeks and Murphy armed themselves with weapons and entered the house. They kicked open the bedroom door, found the victims and demanded money. Murphy grabbed a wallet from the dresser and the men fled from the house. Murphy and Lopez escaped in the vehicle, while Weeks and Defendant fled on foot. Shortly thereafter, police apprehended Defendant -within a mile from the victims’ home and drove him back to the scene where he was identified by the victims as one of the persons who robbed them. Police found the vehicle abandoned and discovered a sword, billy bat and pipe in the back seat. The other three men were subsequently arrested. On June 22, 2011, the State filed a bill of information charging all four men with one count of armed robbery and one count of attempted armed robbery. An amended bill was filed on December 12, 2011, charging them with the same crimes, but adding three other possible dangerous weapons as being used during the commission of the crimes. While his three co-perpetrators entered into plea agreements and received sentences of up to three and five years’ imprisonment at hard labor, Defendant pled not guilty and elected to proceed to trial.
At trial, the jury heard testimony from multiple witnesses called by the State. Bossier Parish Patrol Deputy Mike McConnell testified that he was dispatched to the scene and that he took statements from the victims. Jose and Orlando Tec-ciau described the perpetrators as three short white males with long knives. On cross-examination, Dep. McConnell testi- *421 fled that there was no appearance of physical damage to the door, nor any signs of a struggle inside the home.
Bossier Parish Detective Brandon Masters testified that he met Dr. Robert Hewlett, a veterinarian and the victims’ employer and landlord, at the end of Linda Lane. Dr. Hewlett testified that he lived one-half mile from the Tecciau house and was in his driveway leaving his residence when Jose called him and told him they had been robbed. Dr. Hewlett drove to the Tecciau house and saw Defendant’s vehicle. As he approached, the vehicle sped away and Dr. Hewlett chased the perpetrators until the vehicle turned onto a dead-end street. The men abandoned the vehicle and ran through the woods. Dr. Hewlett waited "with the vehicle and Det. Masters was among the responding officers. Det. Masters testified that he had the vehicle towed to the impound lot. He then returned to the Tecciau home and interviewed Jose Tecciau, who told him that three men came into their home with weapons and robbed them.
After leaving the Tecciau home, Det. Masters was stopped by a passing motorist, who informed him that a man was walking on Old Plain Dealing Road and attempting to hitchhike. Det. Masters and a fellow officer found the man approximately one-half mile from the victims’ home. After a brief chase, Det. Masters and the other officer apprehended the man, placed him in the back of the patrol unit and drove him to the victims’ home where they positively identified him as one of the persons who robbed them. The man was later identified as Defendant.
According to the testimony of Deputy Josh Catheart, Defendant told officers that Weeks and Lopez were with him that evening. Det. Masters used his patrol unit’s computer to pull Lopez’s, Weeks’ and Murphy’s driver’s license photos and asked the victims to identify the men in the photos. They identified Weeks as one of the men who had robbed them. Det. Masters eventually went to the impound lot where the vehicle had been towed and observed a small sword, large sword sheath, billy bat and pipe on the floorboard of the back seat. Sergeant David Faulk, of the Bossier Parish Office Crime Scene Investigations Unit, corroborated Det. Masters’ testimony as to the weapons found inside the vehicle. In addition, a wallet containing Defendant’s identification was found in the center console of the vehicle.
Murphy testified at trial. He stated that, prior to the robbery, the four men met at Weeks’ home in Shreveport where Defendant discussed plans “that we go to these Mexicans out on this ranch out here in Plain Dealing and that they just got paid so that they’ve got a lot of money and we rob them.” Later that night, Lopez drove the men to Plain Dealing where he, Defendant and Weeks, armed with a billy bat, sword and pipe, entered Jose and Orlando Tecciau’s home. According to Murphy, “the bedroom door got kicked open and he [Defendant] held the Mexican up with the sword ... I took the wallet off the dresser and took off running.” Murphy testified that he jumped in the car with Lopez and the two sped away from the home. Murphy further testified that he removed the money from the wallet and tossed the wallet out of the car. An empty brown wallet was recovered by police that night on the side of Doyal Road, near the Tecciau home. Jose Tecciau identified the wallet found on Doyal Road as his wallet that had been taken during the robbery.
Lopez testified next and offered inconsistent testimony. When first asked by the district attorney if Defendant had an idea or plan to commit a crime on the evening in question, Lopez responded affirmatively that “we were going to rob *422 some Mexicans.” Later in his testimony, when the district attorney asked him what was his understanding as to the events that were to take place that night at the victims’ home, Lopez stated that, “I really don’t know what was supposed to take place. The only thing I knew I was supposed to go solicit prostitution. That’s it.”[1] He again changed his story when the district attorney asked him, “Now earlier that evening, though, I think you already testified that when [Defendant] came to the house he discussed committing a robbery. Is that correct?” Lopez responded, “Yes, sir.”
With regard to Defendant’s state of mind prior to the robbery, Lopez testified that “[Defendant] was the — he was still asleep and he and my brother and them was in the back. He was asleep. On the way there he was still drinking because there was still some more drink left. He was drinking still and he was asleep and he had a headache and he just Iayed [sic] down until we got there.”
Lopez further testified that, once the four men arrived at the victims’ home, he remained in the vehicle while Defendant, Weeks and Murphy “must have got weapons out of the back of the trunk” and went inside. After a short period of time in the house, the three men came running outside. Lopez stated that Murphy jumped in the car with him while his brother, Weeks, threw “some stuff in the back of the seat.” Lopez claimed that he did not know what took place inside the house, but that “I just know that [Murphy] had the money in his hand. I didn’t know nothing about no wallet.” During cross-examination, defense counsel asked Lopez if he ever saw Murphy with a “big wad of cash,” which he denied.
Weeks also testified. He related that Defendant “had been drinking a little bit,” but “he had done sobered up a little bit” by the time Defendant arrived at Weeks’ home in Shreveport. Weeks corroborated Lopez’s story that the original plan was to solicit prostitution, but claimed that, when they arrived in Plain Dealing, “it all went wrong and he [Defendant] wanted to rob them.” Weeks’ testimony also confirmed the fact that he was armed with a pipe while Defendant had a sword and Murphy had a billy bat. According to Weeks, Defendant kicked in the bedroom door; and, when the victims started to get up from their seats, Weeks told them, “No, man, don’t move. Just stay right there. Don’t you move.” He stated that “Murphy grabbed the wallet off the thing because he was told to and he followed right behind me.”
Finally, the victims, Jose and Orlando Tecciau, testified. Neither victim is fluent in English; therefore, an interpreter assisted them. Jose confirmed that the three men took the wallet off the dresser and fled from the house. When the district attorney asked him who was the perpetrator with the sword, he responded that it was “the same person that he identified in the patrol [unit]” and he explained that he was able to identify Defendant as one of the intruders because “he was in front of me and that’s the only reason why *423 I remember him completely.” On cross-examination, defense counsel asked Jose if he recognized the two people in the pictures shown to him by the officers and he responded that they looked familiar.
Orlando Tecciau’s testimony was more difficult to follow, possibly because of the language barrier. He stated that three individuals came “busting the [interior] door” and demanded money. While he first denied that the intruders had any weapons, he immediately stated that one man had a baseball bat. He claimed that he could only see one person because he was sitting in front of a television when the men entered the room. However, he then testified that he never saw their faces and could not identify the individuals because when he stood, the men were walking away from him. Orlando testified that the men were wearing dark hoodies at the time of the robbery.
As previously stated, on December 14, 2011, the jury found Defendant guilty as charged of both the armed robbery of Jose Tecciau and the attempted armed robbery of Orlando Tecciau. During sentencing, the court considered Defendant’s extensive criminal history, his brief and inconsistent employment history, his familial relationships, the need for correctional treatment, the fact that his crime created a risk of death or great bodily harm to more than one person, the use of threats of violence during the commission of the crime and the belief that a lesser sentence would deprecate the seriousness of the crime. As stated, Defendant was then sentenced to serve 50 years at hard labor for the armed robbery and 15 years for the attempted armed robbery, with the sentences to run concurrently. A Motion and Order to Reconsider Sentence was denied.
Defendant now appeals.

DISCUSSION

Assignment of Error Number One (Verbatim): The jury erred, as a matter of law, in finding the defendant guilty as charged based on insufficient evidence.
The standard for review in cases that raise sufficiency of the evidence is found in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Jackson standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833, writ denied, 09-0310 (La.11/06/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 09-0725 (La.12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 07-1209 (La.12/14/07), 970 So.2d 529.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753; *424 State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 06-1083 (La.11/9/06), 941 So.2d 35.
An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Jacobs, 504 So.2d 817 (La.1987); State v. Adkins, 39,724 (La.App.2d Cir.6/29/05), 907 So.2d 232, writ denied, 06-2514 (La.5/4/07), 956 So.2d 607; State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
La. R.S. 14:64 provides:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.
The immediate control required of the armed robbery statutes is satisfied when the property taken is within the presence of the owner. State v. Refuge, 300 So.2d 489 (La.1974). Armed robbery may occur where property taken is not in actual contact with the victim. State v. Boelyn, 432 So.2d 260 (La.1983).
Any person acting with specific intent to commit a crime, who acts or fails to act, with the purpose of and toward that goal is guilty of an attempt to commit the offense intended, regardless of whether he would have actually accomplished that goal. La. R.S. 14:27. The state may prove a defendant guilty by showing that he served as a principal to the crime by aiding another. State v. Scroggins, 40,746 (La.App.2d Cir.3/22/06), 926 So.2d 64, writ denied, 06-0980 (La.11/3/06), 940 So.2d 655. Under this theory, the defendant need not actually take anything to be found guilty of the crime. Id.; State v. Dominick, 354 So.2d 1316 (La.1978). Also, a defendant convicted as a principal need not have personally held a weapon to be guilty of armed robbery. State v. Watson, 397 So.2d 1337 (La.1981), cert. denied, 454 U.S. 903, 102 S.Ct. 410, 70 L.Ed.2d 222 (1981). A person, who aids and abets another in a crime, is liable just as the person who directly commits it. Id. A critical inquiry in robbery cases involving principals is whether or not the alleged principal had knowledge that the crime was going to take place. Id.
Louisiana law allows an accomplice to testify against a co-perpetrator even if the state offers inducements to testify. Such inducements are a fact in evaluating the witness’s credibility. State v. Hughes, 05-0992 (La.11/29/06), 943 So.2d 1047. A conviction may be sustained by the uncorroborated testimony of an accomplice, although the jury should be instructed to treat the testimony with caution. State v. Hughes, supra.
In the case sub judice, police apprehended Defendant half a mile from the Tecciau residence shortly after the robbery was committed. When officers attempted to approach Defendant, he immediately fled. All three co-perpetrators, as well as the victims, testified that Defendant was one of the men who took part in the armed robbery. The evidence was *425 sufficient for a trier of fact to conclude that Defendant was at the residence on the night of the armed robbery.
Murphy stated during his -testimony that he took the wallet from the dresser and ran out of the room. This was corroborated by Weeks’ testimony. As a principal to armed robbery, it is of no consequence that Defendant neither physically took the wallet, nor directed Murphy to do so; any actions performed by his co-perpetrators are imputed to him. As such, the evidence submitted would allow a jury to find that, as a principal to armed robbery, Defendant took the wallet from the victims’ home.
Next, the State introduced sufficient evidence for the jury to conclude that the wallet was within the immediate control of the victim. Murphy testified that he took the wallet from the dresser and ran. Jose Tecciau testified that his money was in his wallet on the nightstand and one of the robbers picked it up. From this evidence, a trier of fact could find that the victim’s wallet was on a dresser in the room where the victims were located and, as such, was within the immediate control of the victims.
With regard to Defendant’s claim that there was no proof of use of force or intimidation, we note the testimony of Weeks and Murphy that Defendant kicked open the bedroom door where the victims were located. Orlando Tecciau corroborated this in his testimony when he stated that the men burst through the bedroom door.
We further conclude that the jury could have reasonably found that Defendant was armed with a dangerous weapon. Murphy testified that Defendant “held the Mexican up with the sword.” Weeks’ testimony corroborated this when he stated that Defendant was armed with a sword when the men entered the victims’ home. In addition, Dep. McConnell and Det. Masters both testified that, on the night of the armed robbery, Jose Tecciau stated that three men entered their home and were armed with weapons.
Lastly, Defendant claims that he was too intoxicated to form the requisite intent to commit the robbery and that the State failed to present evidence to support a finding that he did have the necessary intent. However, Weeks testified that Defendant had begun to sober up at the time he unveiled his plan to commit the robbery. The verdict suggests that the jury found this witness’s evidence to be credible and that Defendant had the requisite intent to commit the crime.
Though Defendant does not raise a sufficiency of evidence argument with regard to the attempted armed robbery charge, there was ample testimony presented for a jury to find that Defendant committed the offense.
In summary, from the evidence presented, a rational trier of fact could conclude beyond a reasonable doubt that Defendant did knowingly and willfully commit the crimes of armed robbery and attempted armed robbery.
This assignment of error is without merit.
Assignment of Error Number Two (Verbatim): The district court erred, as a matter of law, in denying defense Motion to Reconsider Sentence and sentencing the defendant to an excessive sentence.
In determining whether a sentence is excessive, the reviewing court will first examine the record to ascertain if the trial court considered the aggravating and mitigating factors under La. C. Cr. P. art. 894 in determining a factual basis for the sentence imposed. State v. Smith, 483 So.2d 688 (La.1983); State v. Lathan, 41, *426 855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 07-0805 (La.3/28/08), 978 So.2d 297. The court must consider such factors as defendant’s personal history, prior criminal record, seriousness of the offense and likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 08-2341 (La.5/15/09), 8 So.3d 581.
Second, a sentence violates La. Const. Art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). If the sentence imposed, in light of the harm done to society, shocks the sense of justice, then the sentence imposed is excessive. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379. Maximum sentences are reserved for the worst offenders and offenses. State v. Cozzetto, 07-2031 (La.2/15/08), 974 So.2d 665; State v. McKinney, 43,061 (La.App.2d Cir.2/13/08), 976 So.2d 802.
The trial judge has wide discretion in imposing sentences within the statutory limits and in consideration of aggravating and mitigating circumstances. Therefore, a reviewing court only considers whether the trial court abused its discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
La. R.S. 14:64(B) provides:
[w]hoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.
Regarding attempted armed robbery, La. R.S. 14:27(D)(3), states, in pertinent part, that “such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.”
Defendant focuses mainly on the trial judge’s sentence for the completed armed robbery conviction. The trial judge acknowledged Defendant’s family consisting of a wife and two children, as well as his inconsistent and unstable history of employment. The trial judge then addressed Defendant’s lengthy criminal history of felony theft, simple burglary, illegal use of weapons and attempted felony theft, as well as his numerous convictions for sex crimes and crimes of violence. The trial judge also considered the risk of death or great bodily harm to more than one person threatened by Defendant’s actions. Lastly, the trial judge cited Defendant’s use of threats of violence and dangerous weapons during the commission of the crime. The trial judge also noted several of the factors considered in the sentencing guidelines of La. C. Cr. P. art. 894.1 and articulated his reasons for the sentence imposed.
The sentence imposed for armed robbery is mid-range, while the sentence for the attempted armed robbery is far below the potential sentence of 49½ years. When the crime and punishment are viewed in light of the harm done to society, 50 years in prison is not grossly disproportionate to the crimes committed, and the sentence does not shock the sense of justice. The trial judge did not abuse his discretion in imposing these sentences.
This assignment is without merit.

*427
Pro Se Assignments of Error

Defendant, pro se, assigns four additional assignments of error on appeal. Each of these assignments will be addressed in turn.
Pro Se Assignment of Error Number One (Verbatim): The District Court committed error sufficient to reverse their ruling when they failed to provide appellant with adequate record and transcribe appellant’s voir dire examination and peremptory challenges.
On January 26, 2012, and April 10, 2012, Defendant filed pro se requests for a free copy of his Boykin transcript, district court minutes, documents committing him into custody and “every document that have my name on it dealing with my trial.” Defendant was provided a free copy of his bill of information, criminal case minutes and documents committing him to custody, but the judge denied him any other copies absent a showing of a particularized need.
Defendant argues that he has been deprived of his constitutional right to judicial review because the appeal record is inadequate for review. He claims that the court reporter failed to transcribe the voir dire from the three panels of prospective jurors, as well as the peremptory challenges.
La. Const. Art. 1, § 19, states that “No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based.” La. Const. Art. 1, § 19. Additionally, La. C. Cr. P. art. 843 provides in pertinent part:
In felony cases, ... the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel.
Courts have refused, however, to overturn a trial court’s ruling when a defendant does not cite to any error or evidentiary hearing relative to the trial, or point to a specific instance of prejudice with respect to any ruling of the court. State v. Neely, 08-707 (La.App. 5th Cir.12/16/08), 8 So.3d 532, writ denied, 09-0248 (La.10/30/09), 21 So.3d 272. Here, Defendant has made no showing that he has been prejudiced by the missing portion of the record. Rather, and without any supporting argument, he simply states that there is a strong possibility that prejudicial remarks tainted the jury and that the omissions leave him with no form of the record in which he may seek judicial redress.
This assignment is without merit.
Pro Se Assignment of Error Number Two (Verbatim): The District Court violated appellant’s due process of law when it allowed the State to use the unduly suggestive identification made while appellant was in the back seat of a patrol unit.
Defendant claims that his due process rights were violated when police officers took him to the victims’ home in the back of a patrol unit for the victims to make an identification. Defendant further argues that his due process rights were violated when an officer presented photos of him to the victims for identification without first placing them in a photo lineup.
Initially, we note that Defendant failed to file a motion to suppress the identifications of which he now complains. La. C. Cr. P. art. 841(A) states, in pertinent part, “An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.” Since Defendant did | not file a motion to suppress the identification prior to trial, he is now precluded from raising this issue on appeal.
*428 Nonetheless, we find that no violation of due process occurred herein. To prove a violation of due process, a defendant must first show that the identification procedure was unnecessarily suggestive and, second, that there was a substantial likelihood of misidentification. Admitting evidence of a suggestive identification procedure does not violate due process if the identification is rehable. Manson v. Brathwaite, 482 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). When assessing the reliability of an identification, the following factors must be considered: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of his or her prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the length of time between the crime and the confrontation. State v. Kemp, 39,358 (La.App.2d Cir.3/11/05), 896 So.2d 349, writ denied, 05-0937 (La.12/09/05), 916 So.2d 1052, citing Manson, supra.
While one-on-one identifications are generally not favored, such identification procedures are permissible under certain circumstances. One-on-one identifications are justified when the accused is apprehended within a relatively short period of time after the occurrence of the crime and has been returned to the scene for immediate identification. State v. Hurd, 05-258 (La.App. 5th Cir.11/29/05), 917 So.2d 567, writ denied, 06-1128 (La.11/17/06), 942 So.2d 530. Such prompt confrontations between the defendant and the victim provide fairness by “ensuring the reliability of the identification and the expeditious release of innocent suspects.” State v. Clennon, 98-1370 (La.App. 5th Cir.6/30/99), 738 So.2d 161.
Jose Tecciau testified that he remembered Defendant because Defendant was standing directly in front of him during the robbery. Since the victim was within close range of Defendant, he would have been able to recognize Defendant. Second, police apprehended Defendant and brought him back to the scene of the crime shortly after the robbery. Such a prompt confrontation between the victim and Defendant ensured a reliable identification as the victim could have easily recalled the appearance of the defendant after only a short amount of time had passed between the incident and the identification.
Furthermore, we find no support for Defendant’s claims that the police showed the victims two photos of him. During the cross-examination of Jose Tecciau, defense counsel asked Jose if he remembered police officers showing him pictures of two other individuals, to which Jose responded affirmatively. This is corroborated by the testimony of Det. Masters who stated that he pulled up two photographs of Weeks and Lopez on his patrol unit computer and showed them to the victims to identify. At no point does the record indicate that the officers showed photos of Defendant to the victims.
This assignment is without merit.
Pro Se Assignment of Error Number Three (Verbatim): When sentencing appellant, Trial Court violated due process when relying upon aggravating circumstances which were also necessary elements of the offense.
Defendant claims that the trial court erred when it took into consideration for sentencing purposes certain provisions of La. C. Cr. P. art. 894.1 that are also necessary elements of the crime of armed robbery, particularly the use of a dangerous weapon and threats of or actual violence in the commission of the offense.
La. C. Cr. P. art. 894.1 states in pertinent part:
*429 B. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation:
(6) The offender used threats of or actual violence in the commission of the offense.
(10) The offender used a dangerous weapon in the commission of the offense.
The fact that some of the factors under La. C. Cr. P. art. 894.1(B) are subsumed in the charge of armed robbery does not dictate that such factors should not be considered in sentencing. State v. Willis, 45,857 (La.App.2d Cir.12/15/10), 56 So.3d 362, writ denied, 11-0150 (La.6/17/11), 63 So.3d 1034.
Defendant’s argument lacks any legal support and is without merit.
Pro Se Assignment of Error Number Four (Verbatim): The District Court erred in that there was no justification in the record to support the great disparity in sentences of the co-defendants in this case.
Defendant claims that the record failed to provide any justification as to the great disparity between his sentence and that of his co-perpetrators. There is no legal requirement, however, that a sentencing judge treat codefendants equally. State v. Quimby, 419 So.2d 951 (La.1982).
This assignment is without merit.
Defendant's final pro se assignment of error requests review for errors patent. This Court automatically performs an errors patent cheek in accordance with the guidelines laid down by the Louisiana Supreme Court in State v. Oliveaux, 312 So.2d 337 (La.1975), and none were found.

CONCLUSION

For the foregoing reasons, the convictions and sentences of Defendant, Randall Wayne Womack, Jr., are affirmed.
AFFIRMED.

. Lopez is a cross-dresser and homosexual and was dressed like a woman on the night of the robbery. According to his testimony, Defendant was "pimping” Lopez out for sex. Lopez explained that the two had been at the ranch in Plain Dealing earlier in the day for prostitution and had made money. The record reveals that the "ranch” has several rental houses on it; and, according to Lopez, there were 15-20 Mexicans there that afternoon for a rodeo. Lopez testified that he believed that they were returning to the ranch that evening for more prostitution; however, Defendant decided to change the plan from prostitution to robbery.