STEWART, J.
hThe defendant, Otis Lee Smith, was convicted of armed robbery, in violation of *1230 La. R.S. 14:64. He was sentenced to serve 25 years’ imprisonment, without benefit of probation, parole, or suspension of sentence, and 30 days in parish jail in lieu of court costs, to run concurrently with the other sentence. The defendant now appeals. Based on the following reasons, we affirm the defendant’s conviction and sentence.
PACTS
On February 27, 2009, the defendant and his brother, Terrell Lamon Kellum,[1] were charged via bill of information with armed robbery, in violation of La. R.S. 14:64. The defendant waived his right to a jury trial, and a bench trial commenced on April 5, 2011. The following evidence was adduced at trial.
Brittany Henry testified that she went to her grandparents’ house on Silver Pine Road at approximately 8:30 p.m. in order to use the computer and internet service. Her uncle, Selento Lewis, who was living with his parents at the time, was present. As Brittany left the home, she noticed two African-American men standing by the side of the house and attempted to get in her car.
One of the men ran inside the home, while the other man ran up to Brittany and pointed a gun at her head. Brittany described the man who approached as about six feet tall with a short hair cut, wearing a red hoodie |2and a bandana across the lower portion of his face. The man instructed her to be quiet and led her into the house.
Once inside the house, Brittany observed that the other man, whom she described as about five feet, ten inches tall, also wore a bandana and had a gun. He repeatedly asked Selento, “Where it [sic] at? I know you got some money, where it [sic] at?” Selento responded he did not know what they were talking about and asked them not to hurt him or Brittany.
The two men instructed Brittany and Selento to lie on the floor. They then covered Brittany’s face with a pillow. Brittany overheard them raiding the house. When the two men returned Brittany and Selento, they instructed them undress and go into a bedroom closet. Brittany relayed that she cried, fearing they were going to rape her. One of the men struck her on the buttocks as she entered the closet.
While inside the closet, Brittany overheard the men ransacking the house, and she could hear one of them talking on the phone. She also heard a gun discharge. When Brittany and Selento thought the two men had left the house, they exited the closet and contacted the police. Brittany’s jewelry that she wore that day was stolen, along with her vehicle.
After making a statement to the police, Brittany was shown three photographic lineups. She identified Kellum as the taller perpetrator. She did not identify the defendant’s picture from the lineup.
Selento testified that his niece, Brittany, stopped by to use the computer and internet. When she left, Selento assumed that the door locked automatically behind her. When the door opened, he thought Brittany had |sreturned to get something that she had forgotten. He was surprised by a man putting a gloved hand around his mouth, putting a gun to his head, and ordering him to stand up. He relayed that the man had on darker clothing, either a black hoodie or a pullover sweater. When *1231 he stood, he saw another man, who was also wearing gloves, standing behind Brittany with a gun to her head. This man wore a red pullover, black shorts, and black tennis shoes. He stated that both perpetrators wore bandanas over their mouths.
The man who held Selento at gunpoint asked him, “Where it [sic] at?” He repeatedly asked Selento for money and dope, and threatened to kill him if he did not give it to him. Selento told him to take the “couple hundred dollars” he had and his jewelry. Although Selento admitted he was a drug dealer, he did not recognize the men and denied ever dealing with either one of them. He did not hear either man use names, but thought he had heard one call the other “Red” or “Rail.”
Selento relayed that the perpetrators made him and Brittany get on the floor, and one of them put his foot on his back and pointed the gun at him. He could hear the bedrooms being ransacked. Sel-ento also testified that the perpetrators made them undress and placed them in the closet. As they were walking toward the closet, Selento stated that one of the perpetrators hit Brittany on the butt, and commented that “if he had time, he’d rape her.”
One of the perpetrators commented that he knew Selento had just purchased new rims for his car because he didn’t have any on his car when he saw him the other day. Selento recalled seeing two young black males walking down the street in his neighborhood the day before. He explained |4that he had never seen the men before then. After reviewing the photographic lineups, Selento identified the defendant as one of the perpetrators, and as one of the young men he saw walking down the street the night before.
Selento testified that the perpetrators took Brittany’s belongings, along with his parents’ television, his mom’s purse that she had just received as a gift, some piggy banks, jewelry, clothes, shoes, a digital camera, and his vehicle. Brittany’s vehicle was recovered, but Selento’s vehicle was found burned in another area in Shreveport. The rims had been removed from his vehicle.
Four alibi witnesses, Latoya Kellum, Shekebra Smith, Dorothy Smith, and Mary Frazier, testified that the defendant attended a birthday party at his mother’s house for his niece at the time that the robbery took place.
Latoya, the defendant and Terrell’s sister, testified that the party was scheduled to start at 5:00 or 6:00 p.m., but it did not start until 9:00 p.m. and lasted about an hour. She explained that the party started late because it took awhile to obtain the decorations for it. Latoya stated that the defendant did attend the party, and when the party ended, went to a local casino with his mom and his wife.
To the contrary, Shekebra, also the defendant and Terrell’s sister, testified that the party began at 7:00 or 8:00 p.m., and lasted three or four hours, ending between 10:00 and 10:30 p.m. Shekebra relayed that the defendant was at the party the entire time, and took her home when it was over.
1 ¿Dorothy, the defendant’s mother, testified that the party started at 9:00 p.m., and lasted until about 10:00 p.m. After the party, she stated that the defendant accompanied her and his wife to a casino.
Mary, Dorothy’s friend, testified that she was on the phone with Dorothy a few minutes before 9:00 p.m., but got off the phone with her to watch the nine o’clock news. She stated that she overheard Dorothy yelling at the defendant “to stay out of the pots she had on the stove.”
*1232 Detective Russell Ross of the Shreveport Police Department testified that on February 27, 2009, he was called to the scene of the home invasion. He arrived around 10:30 p.m., and noticed that several of the rooms in the house had displaced furniture and that things had been taken off the walls. Consistent with Brittany’s statement that she overheard a gunshot while she was in the closet, Detective Ross found a shell casing and he saw damage to the base of the wall consistent with a projectile. Detective Ross took Brittany’s statement.
An audio recording of Detective Ross’s interview with the defendant was played in open court. Detective Ross testified that the defendant told him that he got married on February 7, 2009, and that he and his wife went to Natchitoches and remained there until March 1, 2009. The defendant denied being in Shreveport on February 27, 2009, at approximately 10:00 p.m. During the interview, the defendant instructed Ross to contact his mom to corroborate his story.
| (¡Detective Ross testified that although the police found fingerprints at the crime scene and in the stolen vehicles, none of the fingerprints recovered belonged to the defendant.
The trial court noted that there was a significant conflict between the defendant’s alibi and the testimony of the witnesses who stated he attended his niece’s birthday during the time in which the armed robbery occurred. It also recognized that Selento identified the defendant in a photographic lineup as one of the men that he had seen the day before, and as one of the men that participated in the armed robbery. Considering the testimony, arguments, and evidence, the trial court found the defendant guilty as charged.
On July 26, 2011, the trial court denied the defendant’s motion for a new trial, as well as his motion for post-verdict judgment of acquittal. During this hearing, the state expressed its intent to file a multiple offender bill charging the defendant as a third-felony habitual offender, and the trial court ordered a presentence investigation report. However, during the March 12, 2012, sentencing hearing, the state withdrew the multiple offender bill.
After considering the facts and circumstances of the case and the defendant’s prior criminal history, the trial court sentenced the defendant to serve 25 years’ imprisonment without the benefit of probation, parole, or suspension of sentence, to be served concurrently with any other sentence. It also imposed 30 days in the parish jail, in lieu of court costs, to run 17concurrently with the other sentence. The defendant was given credit for time served.
The defendant filed a motion to reconsider sentence, which was denied on April 24, 2012. He now appeals his conviction and sentence.
LAW AND DISCUSSION

Sufficiency of Evidence

We will begin our review with the defendant’s first assignment of error, in which he alleges that the evidence was insufficient to convict him of armed robbery. More specifically, he argues that Brittany did not identify him as one of the robbers and that Selento incorrectly identified him. The defendant also points out that the defense witnesses placed him at his niece’s birthday party during the robbery. Finally, he argues that no fingerprints were recovered that would connect him to the crime.
When issues are raised on appeal, both as to the sufficiency of evidence and as to one or more trial errors, the reviewing *1233 court should first determine the sufficiency of the evidence. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation |sof the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833. On appeal, a reviewing court must view the evidence in the light most favorable to the state and must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. Jackson, supra.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. Direct evidence provides proof of the existence of a fact, for example, a witness’s testimony that he saw or heard something. State v. Lilly, 468 So.2d 1154 (La.1985). Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience. Id. When the state relies on circumstantial evidence to establish the existence of an essential element of a crime, the court must assume every fact that the evidence tends to prove and the circumstantial evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; State v. Lilly, supra.
|Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/06/09), 21 So.3d 299; State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35. The trier of fact is charged to make a credibility evaluation and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Sosa, 2005-0213 (La.1/19/06), 921 So.2d 94; State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
La. R.S. 14:64, armed robbery, provides:
*1234 A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
11flB. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.
The immediate control required of the armed robbery statute is satisfied when the property taken is within the presence of the owner. State v. Refuge, 300 So.2d 489 (La.1974). Armed robbery may occur where property taken is not in actual contact with the victim. State v. Boelyn, 432 So.2d 260 (La.1983).

Identification

Where the defendant denies participation in the crime, the state must negate any reasonable probability of misiden-tification in order to meet its burden of proof. State v. Youngblood, 41,976 (La.App.2d Cir.5/9/07), 957 So.2d 305, writ denied, 2007-1226 (La.12/14/07), 970 So.2d 530. Positive identification by only one witness may be sufficient to support a defendant’s conviction and establish the elements of crime beyond a reasonable doubt. Id.; State v. Washington, 2005-1055 (La.App. 4th Cir.7/18/01), 793 So.2d 376.
In the case sub judice, both Brittany and Selento testified that they were robbed by two men, and that both men were armed with a dangerous weapon, a handgun. The perpetrators took Brittany and Selento’s personal belongings, along with his parents’ television, his mom’s purse that she had just received as a gift, some piggy banks, jewelry, clothes, shoes, a digital camera, and his vehicle. These items were taken by force, with a handgun, and intimidation, since the perpetrators threatened to kill them if they did not cooperate.
lnBrittany was able to identify the perpetrator who accosted her as Terrell, but she was unable to identify the defendant. We note that the victims may have had difficulty identifying the perpetrators, since both men wore bandanas over the lower portion of their face. On the other hand, Selento identified the defendant as the man who robbed him on February 27, 2009. As mentioned in the facts section above, Selento testified that one of the perpetrators commented that he knew Sel-ento had just purchased new rims for his car because he didn’t have any on his car when he saw him the other day. Selento recalled seeing two young black males walking down the street in his neighborhood the day before that he had never seen before. After reviewing the photographic lineups, Selento was able to identify the defendant as one of the perpetrators, and as one of the young men he saw walking down the street the night before.
As such, we find that Brittany’s testimony, coupled with Selento’s, is reliable.

Alibi Witnesses

A defendant’s alibi may be rejected when inconsistencies exist between the defendant’s statement and the testimony of his alibi witness. State v. Green, 27,652 (La.App.2d Cir.1/24/06), 666 So.2d 1302, writ denied, 97-0504 (La.10/31/97), 703 So.2d 14.
During the defendant’s interview with Detective Ross, he told Ross that he got married on February 7, 2009, and that he and his wife went to Natchitoches and remained there until March 1, 2009. The defendant 112denied being in Shreveport on February 27, 2009, at approximately 10:00 p.m.
*1235 At times, the testimony of the defendant’s four alibi witnesses, Latoya, Sheke-bra, Dorothy, and Mary conflict each other, as well as the defendant’s statement. The defendant alleged that he wasn’t in Shreveport at all, while all of his alibi witnesses testified that he attended his niece’s birthday party during the time that the armed robbery took place. More specifically, Latoya testified that the defendant did get married in Shreveport, but to her knowledge the newlyweds did not go on any sort of honeymoon, not even to Natchitoches. She stated that they just “took a night off to have fun.” Latoya further testified that the defendant lived with her and their mother, Dorothy, even after he got married. The alibi witnesses’ testimonies regarding when the party started and ended conflict each other as well. Their testimonies also differed regarding where the defendant went after the party.
We also note that the photographs from the defendant’s niece’s birthday and the photographs of the defendant standing in his mother’s kitchen that were submitted as evidence that the defendant was at the niece’s birthday party at the time the armed robbery occurred did not have a time/date stamp on them. Therefore, they cannot positively establish that he was there at the time and date that the alibi witnesses alleged.
After a careful review of the record, we find that the record does not substantiate any of the defendant’s claims. None of the defendant’s alibi witnesses could place him at another location at the exact time the robbery | iatook place. Moreover, Selento saw the defendant walking down the street the day before and was able to easily identify him as one of the perpetrators when presented with the photographic lineups.
The trial judge made a reasonable credibility determination, rejecting the defendant’s alibi argument and believing the victims’ testimony. The record negates any reasonable probability of misidentification.

Fingerprints

The defendant argues that no fingerprints were recovered that would connect him to the crime. The absence of fingerprints can be explained by both Brittany and Selento’s testimony that the perpetrators wore gloves.
We find that the evidence presented at trial, viewed under the Jackson standard, was sufficient for the trial court to find that the elements of armed robbery were met, and that the defendant committed the armed robbery of Brittany and Solento pursuant to La. R.S. 14:64. This assignment of error therefore is without merit.

Excessiveness of Sentence

The defendant argues that his 25-year sentence is excessive. Even though a presentence investigation was ordered, the defendant asserts that the trial court’s comments at sentencing do not clearly indicate that it reviewed the report from the investigation. More specifically, the defendant contends that the trial court failed to articulate any mitigating factors pursuant to La. C. Cr. P. art. 894.1. He requests that his sentence be vacated and this case remanded for full consideration of the factors listed under this article. The defendant also argues that the portion of his sentence ordering him to serve 30 days in the parish jail be vacated because indigent | ^defendants may not be incarcerated for their inability to pay a fine that is part of their sentence.
As stated in the previous assignment, whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than 10 years and for not more *1236 than 99 years, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64(B).
The trial court is given wide discretion in imposing a sentence within minimum and maximum limits allowed by the statute; therefore, a sentence will not be set aside as excessive unless the defendant shows the trial court abused its discretion. State v. Hardy, 39,233 (La.App.2d Cir.1/26/05), 892 So.2d 710; State v. Young, 46,575 (La.App.2d Cir.9/21/11), 73 So.3d 473. On review, an appellate court does not determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion. State v. Esque, 46,515 (La.App.2d Cir.9/21/11), 73 So.3d 1021. Intertwined with our review of a sentence for exces-siveness is our review of the record to ensure that the trial court complied adequately with La. C. Cr. P. art. 894.1 and accorded proper weight to all relevant sentencing factors. State v. Smith, 433 So.2d 688 (La.1983).
An excessive sentence is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1 and whether the sentence is constitutionally excessive. State v. Gardner, 46,688 (La.App.2d Cir.11/2/11), 77 So.3d 1052. The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court 11Rtook cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Watson, 46,572 (La.App.2d Cir.9/21/11), 73 So.3d 471; State v. Tatum, 47,292 (La.App.2d Cir.8/15/12), 103 So.3d 550. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267, writ denied, 08-2697 (La.9/18/09), 17 So.2d 388. The defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, the seriousness of the offense, and the likelihood of rehabilitation are some of the elements considered, but the trial court is not required to weigh any specific matters over other matters. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 08-2341 (La.5/15/09), 8 So.3d 581. All convictions and all prior criminal activity may be considered as well as other evidence normally excluded from the trial. State v. Platt, 43,708 (La.App.2d Cir.12/3/08), 998 So.2d 864, writ denied, 2009-0265 (La.11/6/09), 21 So.3d 305. There is no requirement that specific matters be given any particular weight at sentencing. State v. Tatum, supra; State v. Taves, 03-0518 (La.12/3/03), 861 So.2d 144; State v. Caldwell, 46,718 (La.App.2d Cir.11/2/11), 78 So.3d 799.
The second prong requires that a determination be made regarding the constitutional excessiveness of a sentence. A sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, *1237 when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Tatum, supra; State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Washington, 46,568 (La.App.2d Cir.9/21/11), 73 So.3d 440, writ denied, 11-2305 (La.4/27/12), 86 So.3d 625. Normally, sentences at or near the maximum are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 2007-2031 (La.2/15/08), 974 So.2d 665; State v. Taylor, 41,898 (La.App.2d Cir.4/4/07), 954 So.2d 804.
The defendant was sentenced to serve 25 years’ imprisonment, without benefit of probation, parole, or suspension of sentence, and 30 days in parish jail in lieu of court costs, to run concurrently with the other sentence. Although the trial court did not articulate all factors enumerated in La. C. Cr. P. art. 894.1 when making its decision, the record reflects that it did consider the facts and circumstances in this case, as well the defendant’s criminal history that included numerous convictions for |17burglary and theft. Including the instant offense, the defendant is now classified as a third-felony offender.
We can assume the trial court considered the presentence investigation report since it was filed on February 15, 2012, nearly a month before the March 12, 2012, sentencing hearing. It appears that the trial court did not have any mitigating factors to consider. The report indicated that the defendant is not married, nor does he have any children. He dropped out in the 10th grade, did not obtain his GED, and stated that his last job was working as a driller for Gemini Production. The defendant did not indicate his dates of employment.
An indigent defendant cannot be subjected to default time in lieu of the payment of a fine, costs, or restitution. State v. Davenport, 43,101 (La.App.2d Cir.3/19/08), 978 So.2d 1189, writ denied, 2008-1211 (La.1/30/09), 999 So.2d 748; State v. Mack, 30,832 (La.App.2d Cir.6/24/98), 715 So.2d 126. The record reveals that on March 1, 2011, J. Antonio Florence enrolled as the defendant’s counsel of record and the court ordered the Indigent Defender’s office relieved. The defendant was not represented by the Indigent Defender’s office at the time his sentence was imposed. Furthermore, the parish jail time was imposed to run concurrently with the 25-year sentence, with credit for time already served.
After a thorough review of the record, we find that the trial court gave proper consideration to all sentencing factors. The severity of the defendant’s sentence does not shock the sense of justice and is not a 11sneedless infliction of pain and suffering. This assignment is therefore without merit.
CONCLUSION
For these reasons, we affirm the conviction and sentence of the defendant, Otis Lee Smith.
AFFIRMED.

. Codefendant Terrell Kellum pled guilty to simple robbery on September 9, 2010. He was sentenced to five years’ imprisonment at hard labor, suspended, and three years supervised probation.