LOLLEY, J.
 

 | tThis criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. The defendant, Calvin Breakfield, was convicted of aggravated rape, a violation of La. R.S. 14:42. He was sentenced to imprisonment at hard labor for life, without the possibility of parole, probation or suspension of sentence. The defendant now appeals. For the following reasons, the defendant’s conviction and sentence are affirmed, as amended, and the case is remanded for instructions to the defendant pursuant to La. R.S. 15:543.
 

 Facts
 

 In the early afternoon hours of Sunday, May 5, 2007, the victim, A.H., was outside her home in Shreveport, Louisiana. At the time she was 83 years old. A young black male, later identified as Calvin Breakfield, came out of A.H.’s next-door neighbor’s garage and asked to use A.H.’s bathroom-she refused. Breakfield then told A.H. that her neighbor was his grandmother and asked if he could use A.H.’s phone to call his grandmother. A.H. agreed to bring her phone to Breakfield so that he could make the telephone call, but told him that he could not come into the house.
 

 After A.H. entered her house, Break-field followed her in, knocked her down, and kicked her. When A.H. attempted to get up, Breakfield hit her. A.H. later testified that “it was just anger on his face.... I knew if I said another word, he would have killed me.” The defendant ripped A.H.’s clothes off, including the chain around her neck. He then dragged A.H. down the hallway, through her own blood, to her bedroom.
 

 | gAfter dragging A.H. to the bedroom, Breakfield lay on top of her and attempted to rape her, but because A.H. had a prolapsed bladder, Breakfield was unable to fully penetrate her vaginally. He then turned A.H. over onto her stomach and sodomized her. A.H. then felt what she believed to be Breakfield urinating on her.
 

 Breakfield demanded money from A.H. and broke a bank found on the floor, which held some change. A.H. then lost consciousness. When she awoke, Breakfield was gone, and she was able to make her way to the telephone and call for help. The officer responding to the scene found
 
 *1017
 
 A.H. in her house, naked and covered in blood.
 

 A.H. was transported to the hospital. The coroner for Caddo Parish, Dr. Mairus McFarland, conducted an examination of A.H. after emergency personnel had ensured that her condition had stabilized. A.H. was anxious, tearful and trembling. A.H.’s eyes were swollen shut from the blows to her face by Breakfield; she had sustained fractures of her left eye and nose, as well as a severe laceration to her left hand, pneumothorax and multiple rib fractures. A.H. had also sustained a laceration to the surface of her prolapsed bladder. A.H.’s anus exhibited bruising, redness, abrasions and swelling; these injuries rendered a “typical” examination, including the collection of possible biological material, too painful. A sterile swab of the area around A.H.’s anus, however, later revealed DNA consistent with the defendant’s reference sample. A.H.’s physical recuperation in the hospital lasted for six days.
 

 | ^Breakfield was arrested on May 8, 2007. While in the presence of Officer Paul Robinson of the Shreveport Police Department and while changing into a jumpsuit so that his clothes could be seized, Breakfield began muttering to himself. He stated that he knew he should not have taken “the X” because then he never would have gone to the lady’s house; rung the doorbell; asked her to use the phone; beat her and dragged her down the hallway; “stuck it to her”; or, “shot it on her back.” All of these comments were apparently freely made to himself in the presence of Off. Robinson.
 

 On May 15, 2007, the defendant was charged with the aggravated rape of A.H. Prior to trial, the state filed a notice of its intent to use other crimes evidence, citing its purpose as proving “motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident.”
 
 [1]
 
 After a brief hearing, the trial court denied Breakfield’s motion in limine, which requested exclusion of the other crimes evidence.
 

 |4A sanity commission was ordered by the trial court, and at the conclusion of a hearing on the matter, Breakfield was found to be competent to proceed. On November 6, 2008, after a jury trial, Breakfield was found guilty as charged. He was sentenced to life imprisonment without possibility of parole, probation, or suspension of sentence; additionally, the
 
 *1018
 
 trial court sentenced Breakfield to a concurrent sentence of 30 days in the parish jail, in lieu of court costs. Breakfield filed motions for new trial, for post-verdict judgment of acquittal, and to reconsider sentence-all of which were denied. This appeal ensued.
 

 Discussion
 

 Sufficiency of the Evidence
 

 In his first assignment of error, Breakfield argues that the evidence at trial was not sufficient to support a conviction of aggravated rape. Specifically, he argues that, because of A.H.’s medical condition, it would not have been possible for him to have penetrated A.H. vaginally. Furthermore, Breakfield argues that, because A.H. was in pain after the attack, the anal examination could not be completed. He also attacks the credibility of A.H.’s testimony because she was “in pain and clearly confused.”
 

 “Rape” is defined as “the act of anal, oral, or vaginal sexual intercourse with a male or female person without the person’s lawful consent.” La. R.S. 14:41. Additionally, “[ejmission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse,
 
 however slight,
 
 is sufficient to complete the crime.”
 
 Id. (emphasis
 
 added).
 

 | BLouisiana R.S. 14:42, in pertinent part, defines aggravated rape as:
 

 [A] rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
 

 (1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
 

 (2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 2001-1658 (La.05/20/03), 851 So.2d 921,
 
 cert, denied, 541 U.S.
 
 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Carter,
 
 42,894 (La.App. 2d Cir.01/09/08), 974 So.2d 181,
 
 urrit denied,
 
 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.02/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App. 2d Cir.01/14/09), 1 So.3d 833. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 1994-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App. 2d Cir.02/25/09), 3 |fiSo.3d 685;
 
 State v. Hill,
 
 42,025 (La.App. 2d Cir.05/09/07), 956 So.2d 758,
 
 writ denied,
 
 2007-1209 (La.12/14/07), 970 So.2d 529.
 

 An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.
 
 *1019
 

 State v. Jacobs,
 
 504 So.2d 817 (La.1987);
 
 State v. Adkins,
 
 39,724 (La.App. 2d Cir.06/29/05), 907 So.2d 232,
 
 unit denied,
 
 2006-2514 (La.05/04/07), 956 So.2d 607.
 

 In this case, all of the elements of aggravated rape were supported by A.H.’s testimony at the trial. She described how Breakfield attempted to penetrate her vaginally, but when he was unable to, he turned her over and sodomized her. The medical examination following the attack supported her testimony-she sustained a laceration which would be consistent with a vaginal penetration. Although Break-field argues that A.H.’s prolapsed bladder prevented vaginal penetration, the law provides that any penetration, however slight, is sufficient to complete the crime.
 
 See State v. Self,
 
 1998-39 (La.App. 3rd Cir.08/19/98), 719 So.2d 100,
 
 writ denied,
 
 1998-2454 (La.01/08/99), 734 So.2d 1229. Further, A.H.’s testimony that Breakfield sodomized her is also supported by the forensic examination, which revealed trauma to her body in that area. Additionally, Breakfield’s DNA was recovered from the area surrounding A.H.’s anus. A.H.’s 17testimony, and the brutality of the attack, were also evidenced by the crime scene itself, further proving the elements necessary for aggravated rape and supporting Breakfield’s conviction.
 

 Finally, any minor inconsistencies in the testimony adduced at trial go to the weight of the evidence, not its sufficiency. This court must afford great deference to the fact-finder’s decisions in this regard. When viewed in the light most favorable to the prosecution, the facts established by the evidence in this case are sufficient for a reasonable juror to have concluded beyond a reasonable doubt that the defendant was guilty of every essential element of aggravated rape. Accordingly, we conclude that this assignment is without merit.
 

 Other Crimes Evidence
 

 In his second assignment of error, Breakfield maintains that the trial court erred in allowing testimony of other crimes evidence relative to an incident involving another elderly victim, R.R. First, he argues that the record does not reflect that a hearing was conducted as to the admissibility of other crimes evidence. In addition, he states that at trial the state failed to show by clear and convincing evidence that R.R. had been the victim of a sexual assault. Breakfield asserts that the evidence did not tend to show motive, intent, preparation, plan or any other purpose which was listed by the state in its notice. Finally, he also argues that there was no evidence of a sexual assault in the other case, and that the prejudicial nature of the evidence outweighed its probative value. We disagree.
 

 | ^Generally, evidence of other acts of misconduct is inadmissible because it creates the risk that the defendant will be convicted of the present offense simply because the unrelated evidence establishes him or her as a “bad person.” La. C.E. art. 404(B)(1);
 
 State v. Jackson,
 
 625 So.2d 146, 148 (La.1993). This rule of exclusion stems from the “substantial risk of grave prejudice to the defendant” from the introduction of evidence regarding his unrelated criminal acts.
 
 State v. Prieur,
 
 277 So.2d 126 (La.1973).
 

 Evidence of other crimes may be admissible if the state establishes an independent and relevant reason,
 
 i.e.,
 
 to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. art. 404(B)(1);
 
 State v. Roberson,
 
 40,809 (La. App. 2d Cir.04/19/06), 929 So.2d 789.
 

 
 *1020
 
 Upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. art. 404(B). Even when the other crimes evidence is offered for a purpose allowed under Article 404, the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defense. The probative value of the extraneous crimes evidence must outweigh its prejudicial effect. La. C.E. art. 403;
 
 State v. Jacobs,
 
 1999-0991 (La.05/15/01), 803 So.2d 933, cert
 
 denied,
 
 534 U.S. 1087, 122 S.Ct. 826, 151 L.Ed.2d 707 (2002).
 

 |¡,A trial judge is vested with wide discretion in determining relevance of evidence; his ruling on the admissibility of other crimes evidence will not be overturned absent a clear showing of abuse of discretion.
 
 State v. Scales,
 
 1993-2003 (La.05/22/95), 655 So.2d 1326, cert
 
 denied,
 
 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996);
 
 State v. Cooks,
 
 36,613 (La.App. 2d Cir.12/04/02), 833 So.2d 1034. For evidence of other crimes to be admissible, the state must prove with clear and convincing evidence (1) that the other acts or crimes occurred and were committed by the defendant, (2) demonstrate that the other acts satisfy one of the requirements of La. C.E. art. 404 B(l) (motive, intent, knowledge, identity, absence of mistake or accident), and (3) show that the probative value of the evidence outweighs its prejudicial effect.
 
 State v. Jackson, supra.
 

 The erroneous introduction of other crimes evidence is subject to harmless error review.
 
 State v. Roberson, supra; State v. Gatti,
 
 39,833 (La.App. 2d Cir.10/13/05), 914 So.2d 74,
 
 unit denied,
 
 2005-2394 (La.04/17/06), 926 So.2d 511.
 

 In this case, the testimony adduced at trial shows that the prior act allegedly committed by Breakfield did constitute sexually assaultive behavior. R.R. had been beaten; her shorts were pulled down; and her attacker exposed his penis. Whether a rape occurred is not clear; R.R. lost consciousness, and the sexual assault examination did not conclusively establish that penetration had occurred. Article 412 does not require that the other act have been an identical act, however; it merely requires that the [ mprevious act have been sexually assaultive, and that any prejudicial effect be outweighed by its probative value.
 

 The probative value of evidence of Breakfield’s alleged previous act was great. Both victims were elderly widows who lived alone. Both victims lived within a few miles of Breakfield. Both victims were outside their residences when Break-field rode by on his bicycle, and he requested to use the telephone on each occasion. After gaining entry to both victims’ homes, Breakfield brutally assaulted each victim and sexually assaulted each one. The similarity of the acts was highly probative in the context of proof of Break-field’s
 
 modus operandi
 
 and criminal intent.
 

 Even if the prior act was not sexually assaultive, it was admissible under La. C.E. art. 404, pursuant to
 
 State v. Prieur, supra.
 
 The state provided the court and the defendant with the requisite notice of its intent to use evidence of Breakfield’s prior acts. The trial court conducted a brief hearing, stating that the evidence of the prior crime “falls within the line of Article 412.2,” also opining that the probative value of the evidence would outweigh any prejudicial effect. There was sufficient evidence to support a finding by a jury, by a preponderance of the evidence, that Breakfield committed the previous act. The acts were almost identical; the
 
 *1021
 
 defendant’s fingerprint and partial palm print had been obtained at the previous crime scene. The state therefore met its burden of proof pursuant to La. C.E. art. 1104;
 
 State v. Prieur, supra.
 
 The jury was given a limiting instruction.
 

 Finally, even if admission of the evidence by the trial court had been in error, any such error was harmless. Because of the overwhelming weight |n of the evidence against Breakfield here, particularly the DNA evidence, the verdict in this case was surely unattributable to the admission of the evidence. The outcome would surely have been the same regardless of the admission of such evidence. So considering, we conclude that this assignment is without merit.
 

 Sentencing
 

 As stated the trial court sentenced Breakfield to life imprisonment without possibility of parole, probation, or suspension of sentence along with a concurrent sentence of 30 days in the parish jail, in lieu of court costs. The trial court erred in imposing default time for failure to pay the court costs. An indigent defendant may not be subjected to imprisonment because he is unable to pay a fine which is part of his sentence.
 
 Bearden v. Georgia,
 
 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983);
 
 State v. Monson,
 
 576 So.2d 517 (La.1991);
 
 State v. Tillman,
 
 43,569 (La. App. 2d Cir.10/22/08), 997 So.2d 144. A defendant’s claim of indigence in such a situation may be discerned from the record.
 
 State v. Williams,
 
 484 So.2d 662 (La.1986);
 
 State v. Brovm,
 
 43,458 (La.App. 2d Cir.09/24/08), 996 So.2d 461. The record shows that Breakfield was and is an indigent. He was represented at trial and on appeal by the indigent defenders’ office. At the time of trial, he was 17 years old and had an eighth grade education. There is no indication that he had ever been employed, and he had limited family connections. Therefore, because Breakfield was apparently indigent and unable to pay the fine, the portion of the sentence imposing additional jail time for failure to pay the fine is vacated.
 

 I ^Additionally, the trial court failed to inform Breakfield of the sex offender notification and registration requirement as required under La. R.S. 15:543. His conviction of aggravated rape, a violation of La. R.S. 14:42 and a “sex offense” under La. R.S. 15:541(14.1), requires that Break-field be subjected to the sex offender notification and registration requirements under Louisiana’s sex offender laws. La. R.S. 15:542. Additionally, La. R.S. 15:543 requires that the trial court notify a defendant convicted of a sex offense in writing, using the form contained in La. R.S. 15:543.1, of the registration and notification requirements. It further requires that such notice be included on any guilty plea forms and judgment and sentence forms provided to the defendant, and that an entry be made in the court minutes stating that the written notification was provided. The record does not indicate that Breakfield was provided with any judgment and sentence form, or orally informed by the trial court of his registration requirements at his conviction and sentencing. As a result, remand is required for the purpose of providing the appropriate written notice to the defendant of the sex offender registration requirements.
 
 State v. Scott,
 
 42,997 (La. App. 2d Cir.02/13/08), 975 So.2d 782.
 

 Conclusion
 

 For the foregoing reasons, the conviction and sentence, as amended, of Calvin Breakfield are affirmed. The case is remanded to the trial court for the purpose of providing the appropriate written notice
 
 *1022
 
 to the defendant of the sex offender registration requirements.
 

 AFFIRMED AS AMENDED AND REMANDED.
 

 [1]
 

 . While investigating the attack on A.H., detectives recalled another similar attack, which had occurred 2 years earlier and had remained unsolved. In that case, the victim was also a widow over 80 years old. The previous victim lived within a 4-mile radius of the defendant and A.H.
 

 On the afternoon of July 19, 2005, after attending church, the earlier victim, R.R., was outside with her dog. A young male rode by on a bicycle and waved. After R.R. waved back, the young man returned to R.R.'s driveway and asked to use R.R.'s phone to call his sister. R.R. told the young man to come to the door, so that she could let him use the receiver of the phone, which was on a long cord. He appeared to attempt to make a call, which was not answered. The young man then asked R.R. if he could use her bathroom; R.R. agreed. When the man returned from the bathroom, he approached R.R. from behind and began to choke her. The young man beat her, pulling her shorts down and exposing his penis. R.R. passed out then regained consciousness to find the attacker gone.
 

 A fingerprint was obtained from R.R.’s phone, and a partial palm print was found in the bathroom. At that time the defendant's fingerprints were not in the Automated Fingerprint Identification System (AFIS), which is a statewide database of prints of job applicants and arrestees, collected over many years. Two years later, as a result of the rape of A.H., the fingerprint and palm print obtained from R.R.’s crime scene were matched to Breakfield.