NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

20-359

STATE OF LOUISIANA

VERSUS

WILLIE R. SANDERS, JR.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 344,581
HONORABLE LOWELL C. HAZEL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

CANDYCE G. PERRET
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Van H. Kyzar, and Candyce G. Perret, Judges.

CONVICTION AFFIRMED;
SENTENCE AFFIRMED IN PART AND VACATED IN PART.

Peggy J. Sullivan
Louisiana Appellate Project
Post Office Box 2806
Monroe, LA   71207-2806
(318) 855-6038
COUNSEL FOR DEFENDANT/APPELLANT:
      Willie R. Sanders, Jr.

Phillip Terrell, Jr.
District Attorney
Catherine L. Davidson
Assistant District Attorney
Post Office Box 7358
Alexandria, LA   71306-7358
(318) 473-6650
COUNSEL FOR APPELLEE:
      State of Louisiana

**PERRET, Judge.**

Defendant, Willie R. Sanders, Jr., was charged by bill of information with one count of aggravated assault with a firearm, a violation of La.R.S. 14:37.4, and possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. The latter charge was nolle prossed by the State. Defendant was tried and found guilty of aggravated assault with a firearm, and on March 16, 2020, he was sentenced to serve six years at hard labor. Although he was ordered to pay a $10,000.00 fine, in lieu of the fine, the judge ordered Defendant to serve one year to run concurrently with the six-year sentence. For the following reasons, we affirm the conviction but amend the sentence to vacate that portion of Defendant's sentence requiring him to serve one year in default of payment of the fine.

## FACTS:

The facts of this case are discussed fully in Assignment of Error Number One.

## ERRORS PATENT:

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there is one error patent regarding the sentence imposed.

After ordering Defendant to serve six years at hard labor for his conviction of aggravated assault with a firearm, the trial judge ordered Defendant to pay a $10,000.00 fine. Noting that Defendant was indigent and in jail, the trial judge ordered Defendant to serve "a year in lieu of the fine." The trial judge ordered the year to run concurrently with the six-year-hard-labor sentence. Further explaining, the trial judge stated:

BY THE COURT:

> All right. You have, you have a def - - well the default's gonna be a year, and I'm just gonna have him serve the default time, and that's gonna run concurrent with the six year sentence.
>
> . . . .
>
> I'm gonna give you the one year for the default and the six years for the aggravated assault and then, they're, they're gonna run concurrent.

In addition to the trial judge's notation that Defendant was indigent, we note that Defendant was represented by the Public Defender's office at trial and is represented by the Louisiana Appellate Project on appeal. This court has found this to be presumptive evidence of indigence. *See State v. Mallette*, 15-1131 (La.App. 3 Cir. 6/8/16), 193 So.3d 603, *writ denied*, 16-1301 (La. 6/16/17), 221 So.3d 837; *State v. Holloway*, 10-74 (La.App. 3 Cir. 10/6/10), 47 So.3d 56.

In *State v. Major*, 03-249, pp. 2-3 (La.App. 3 Cir. 3/2/05), 898 So.2d 548, 550-51, this court explained:

> It is well-settled that "[a]n indigent person may not be incarcerated because he is unable to pay a fine which is part of his sentence. *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983)." *State v. Zabaleta*, 96-2449, p. 1 (La.3/7/97), 689 So.2d 1369. The need for incarceration raises an issue when fines or costs are not paid, because La.Code Crim.P. art. 884 requires that, when a trial court imposes a fine or costs, it must also impose a specified term of imprisonment in the event Defendant defaults on payment of the fine or costs. Because an indigent person may not be incarcerated for failure to pay a fine, the supreme court has vacated "the portion of . . . [a] sentence which provides for a jail term in the event of default of payment of a fine . . . ." *Zabaleta*, 689 So.2d 1369.

Since Defendant is indigent, the trial court was not authorized to order default time for Defendant's failure to pay the fine. However, we note it can be argued that the one year imposed as default time is not an "additional" one year since it is ordered to run concurrently with the six-year-hard-labor sentence. In *State v. Essex*, 618 So.2d 574, 578 (La.App. 2 Cir. 1993), the court found no correction was needed when the trial court ran the default time concurrently with

2

the hard labor sentence. *See also State v. Smith*, 47,890 (La.App. 2 Cir. 5/22/13), 114 So.3d 1229, (the court found no correction was needed when the defendant was not represented by the Indigent Defender's office at the time of sentencing and since the parish jail time was ordered to run concurrently with the twenty-five-year sentence, with credit for time already served).

Contrarily, other cases have ordered the default time for an indigent defendant be deleted even when it is ordered to run concurrently with the underlying sentence. *See State v. Warren*, 28,889, 28,890 (La.App. 2 Cir. 12/11/96), 712 So.2d 500; *State v. Pratt*, 50,152 (La.App. 2 Cir. 12/30/15), 184 So.3d 816, *writ denied*, 16-123 (La. 1/25/17), 215 So.3d 262; *State v. Holloway*, 10-74 (La.App. 3 Cir. 10/6/10), 47 So.3d 56; *State v. Breakfield*, 44,605 (La.App. 2 Cir. 9/23/09), 21 So.3d 1014. Since these cases are the majority, with one of the cases being from our own circuit, we hereby delete the portion of Defendant's sentence requiring him to serve one year in default time.[1]

## ASSIGNMENT OF ERROR NUMBER ONE:

Defendant claims the evidence presented at trial was insufficient to convict him of aggravated assault with a firearm. Specifically, Defendant contends that the victim, Ms. Humphrey, did not testify that Defendant attempted to commit a battery nor that he intentionally placed her in reasonable apprehension of receiving a battery. Defendant acknowledges that Ms. Humphrey testified that she was scared, but he points out that she was not scared to the point of leaving. He contends that her unsupported testimony, contradicted at trial by his testimony, was insufficient to support his conviction for aggravated assault with a firearm.

---

[1]In briefing its response to Defendant's excessive sentence claim, the State notes that the one year default time may be improper considering Defendant is represented by the Louisiana Appellate Project. However, the State contends that even if improper, the imposition of the fine itself is not improper.

Aggravated assault with a firearm is defined in La.R.S. 14:37.4 as "an assault committed with a firearm." An assault is defined in La.R.S. 14:36 as "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." A battery is defined in pertinent part as "the intentional use of force or violence upon the person of another[.]" La.R.S. 14:33.

At trial, Aaliyah Humphrey, the victim, testified that her cousin, Aneyka Gentle, and her cousin's one year old baby were at her house prior to their encounter with Defendant. At Ms. Gentle's request, Ms. Humphrey drove Ms. Gentle and the baby to Taco Bell to get something to eat. After ordering food at the drive thru, they drove up to the window. The baby was in a baby seat in the back seat of the car, but he was not strapped in. As they pulled up to the window to pay for the food, a car pulled up behind them, and Defendant, the father of the baby, approached their vehicle. Ms. Humphrey testified that as Defendant was arguing with Ms. Gentle, she saw him pull the baby through the partially lowered backseat window. Defendant then got in the car behind them with the baby and left. Ms. Gentle asked the victim to follow Defendant, which she did. The two women were worried about the baby's safety due to the driver's "crazy" driving at a high rate of speed while running stop signs and red lights. Ms. Humphrey, not wanting to get a ticket for running red lights and stop signs, testified that she chose to stop following the vehicle. At Ms. Gentle's direction, she proceeded to a residence on Canal Street after Ms. Gentle learned from her mother where the baby had been taken by Defendant.

Upon arriving at the residence, Ms. Humphrey stayed in the car while Ms. Gentle entered the house. About five to ten minutes later, Ms. Gentle came out of the house upset and crying and asked for Ms. Humphrey's phone so she could call her mother. As Ms. Gentle re-approached the house, Defendant came outside with

4

an AK-47 assault rifle described by Ms. Humphrey as having a short stock with a brown handle. It had an extended clip on it which contained "a lot of bullets." Ms. Humphrey testified that Defendant "comes [sic] and aims at me" and repeatedly yelled at her "to get the 'f' from in front of his house" before he shot her. When asked if Defendant said anything about shooting the car, Ms. Humphrey said he said he was going to shoot the car if she did not leave from in front of his house. She described the Defendant's approach as "angry" before he stuck the gun in her face. Ms. Humphrey testified that she was scared. She told Ms. Gentle to bring her phone back so she could leave. When she did this, Defendant grabbed the phone from Ms. Gentle's hand and threw it far down the street. Ms. Humphrey drove down the street and retrieved her phone, which was shattered but useable. Ms. Gentle got back in the car and Defendant chased the car as they fled to call police. Defendant still had the gun, which he pointed at them as they were fleeing. Ms. Humphrey confirmed that she continued to feel her life was threatened. She contacted police and had no further involvement in the situation.

Devn Cates, a former officer with the Alexandria Police Department, testified that he responded to the Canal Street residence (owned by Kenny Dixon, Sr., a place Defendant stayed frequently) in reference to Defendant breaking a phone and chasing the victim with a firearm. Defendant acknowledged that the gun that was located in the home was his, and he had owned the gun for approximately a year. He denied using it in the incident with Ms. Humphrey. However, information Officer Cates received during his investigation led him to believe that Defendant did in fact use the gun on Ms. Humphrey. He was informed by another officer that the victim stated that Defendant threatened to "shoot up" the people inside the vehicle; he then chased them down the road with the firearm. He subsequently arrested Defendant for aggravated assault with a firearm.

5

Corporal Kerry Simmons of the Alexandria Police Department also responded to the Canal Street residence. He found a loaded gun similar to that described by Ms. Humphrey under a mattress in the bedroom where Defendant slept.

Defendant testified that at the time of the incident he was living at 906 Canal Street. He confirmed that he had a child with Aneyka Gentle, and that on the day in question, he was at Taco Bell when he saw his son jumping up and down in the back seat of the car in front of him. He approached the car and asked Ms. Gentle where she was going. She told him she was going to Humphrey's house, and Defendant told her he did not want his baby going there because he did not want him around her [presumably Ms. Humphrey]. Defendant testified that there was no car seat in the car, and when he asked Ms. Gentle to give him the baby, she handed him the baby through the window. He went back to the car he was in, and when Ms. Humphrey attempted to get the baby back from him, he told her no. Defendant said Ms. Humphrey and Ms. Gentle left, and he pulled out behind them and went home. Defendant then spoke with Ms. Gentle's mother on the phone, and she told him to keep the baby there and that she was going to come get him. Before police arrived, Ms. Humphrey and Ms. Gentle arrived, and Defendant and Ms. Gentle argued. Defendant admitted he took the phone from Ms. Gentle, threw it down, and broke it. According to Defendant, the argument and his throwing of the phone happened inside the house while Ms. Humphrey was outside in her car. Defendant testified that he told the two ladies to leave, but he denied using a gun. He then testified that he had the assault rifle in his hand when he went outside and told the two ladies to leave. He denied pointing the gun and he said he was incapable of running due to a leg injury. According to Defendant, when he went outside with the gun, the two ladies left. He testified that he was on the phone with

6

Ms. Gentle's mother, Priscilla Gentle, the "whole time." Defendant denied that any erratic driving occurred.

On cross-examination, when Defendant was asked why he grabbed the phone and threw it, he said, "'Cause that's what I did. It wasn't no whying to it." Defendant denied ever feeling threatened by the two ladies, and when asked why he brought his gun outside, he responded, "Don't remember - - don't know why. . . Don't know why. Just did it." He testified that he carries guns around frequently because he has been shot before. He then testified that Ms. Humphrey never got out of her car, and that "[he] never came out the house all the way fully with the gun." On re-direct exam, Defendant denied ever pointing the weapon at anyone.

In *Mallette*, 193 So. 3d at 606, this court set forth well-settled law:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibilities [sic] of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. *See Graffagnino*, 436 So.2d at 563, *citing State v. Richardson*, 425 So.2d 1228 (La.1983). To obtain a conviction, the elements of the crime must be proven beyond a reasonable doubt.

*State v. Freeman*, 01-997, pp. 2-3 (La.App. 3 Cir. 12/12/01), 801 So.2d 578, 580.

> Furthermore, the testimony of a single witness is sufficient to support a conviction "[i]n the absence of internal contradiction or irreconcilable conflicts with physical evidence." *State v. Dixon*, 04-1019, p. 12 (La.App. 5 Cir. 3/15/05), 900 So.2d 929, 936. The trier of fact may accept or reject the testimony of any witness, and the determination of the credibility of that witness, in

whole or in part, is left to its sound discretion and "will not be re-weighed on appeal." *Id*. at 936.

*State v. F.B.A.*, 07-1526, pp. 1-2 (La.App. 3 Cir. 5/28/08), 983 So.2d 1006, 1009, *writ denied*, 08-1464 (La.3/27/09), 5 So.3d 138.

We find that the State proved the elements of aggravated assault beyond a reasonable doubt. Ms. Humphrey, the victim, testified that Defendant was angry when he pointed the gun at her face, and she was scared. He threatened to shoot her and the car in which she and Ms. Gentle were riding. Ms. Humphrey confirmed that she continued to feel her life was threatened when Defendant pointed the gun at them as they were fleeing. We find the evidence established, beyond a reasonable doubt, that the victim was intentionally placed in reasonable apprehension of receiving a battery.

## ASSIGNMENT OF ERROR NUMBER TWO:

Defendant claims his six-year sentence is excessive as the only aggravating circumstances considered were the use of a firearm and the making of threats, elements of the offense. Although the trial court stated Defendant's actions manifested deliberate cruelty to the victim, Defendant contends none of his actions manifested deliberate cruelty and neither the victim, nor her property, were in any way injured. Aggravated assault with a firearm carries a maximum fine of ten thousand dollars and a ten year term of imprisonment with or without hard labor.

Prior to imposing Defendant's sentence, the judge stated:

All right. All right, Mr. Sanders' criminal history, although not lengthy, does reveal a history, um, beginning when he was around seventeen years of age. The Court would specifically note that most of his felony arrests are for crimes against persons, cruelty to juveniles, uh, that was from August the 23rd of 2012. That matter was no cased. Assault by drive by shooting that was from September the 15th of 2012. That matter was nolle prossed. Attempted first degree murder from May the 8th of 2013. That matter was nolle prossed. Um, Mr. Sanders has only, has only a felony arrest, has a felony arrest for illegal possession of a stolen firearm. That was from April the 5th of 2013. This matter was nolle prossed. Um, Mr. Sanders' first and

only conviction was for a conspiracy to commit second degree robbery. He was originally arrested and charged with armed robbery, however, pursuant to, to the plea, the matter was reduced to conspiracy to commit second degree robbery and defendant was placed on probation. It would appear that, uh, Mr. Sanders was successful on probation as he was never brought up for revocation hearing during his three years on probation. The defendant was arrested on the instant offense on March the 7th of 2019. He subsequently was relieved of his bond obligation on August the 1st of 2019 due to not having a 230.1 bond hearing. While released and one month before his trial on this case, Mr. Sanders was arrested on June the 6th of 2020 for one count of illegal possession of a stolen firearm and one count of felon in possession of a firearm. Thus, while not a lengthy, uh, criminal history, Mr. Sanders does have a history of guns and violence against persons. All right.

Okay. The sentencing - - the aggravated [sic] and mitigating factors under Louisiana Code of Criminal Procedure Article 894.1, when a defendant has been convicted of a felony or misdemeanor, the Court should impose a sentence of imprisonment if any of the following occur: there is undue risk that during the period of suspended sentence or probation, the defendant will commit another crime; the defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; a lesser sentence will deprecate, deprecate the seriousness of the, of the crime. (As read)

The court notes that the following aggravated [sic] factors: the def, the offender's conduct during the commission of the offense manifested deliberate cruelty to the victim; the offender used threats or actual violence in the commission of the offense; the offender used a dangerous weapon; the offender used a firearm while committing the offense which has, as an element, use of or threatened use of physical force against the person or property of another which by it's [sic] very nature involves a substantial risk that physical force may be used in the course of committing the offense. (As read) . . . .

. . . .

Okay. Thank you. All right. The Court doesn't find any other mitigating factors. All right. Sentencing ranges. Um *State v. Martin*, 17-1100, La. App. 1st Cir., um, 2/27/2018, 243 So.3d 56; sentence ten years at hard labor, no fine. Defendant became upset with his brother, one of the victims, over being kicked out of his brother's house. Four months after being kicked out, defendant drives to his father's house where his brother and another brother were visiting. Defendant gets out of a truck, goes up to brother and threatens to beat him up and kill him. Defendant shoves brother. Other brother and dad try to stop defendant. Defendant goes to his truck, puts a gun - - excuse me - - in his back pocket, walks it back to brother. Defendant again shoves brother, and father and brother try to stop defendant. Defendant then

9

pulls gun from pocket, points gun directly at brother's forehead and continues to tell him he's gonna kill him. Okay. . . . *State v. Brown*, 17-124, La.App. 4th Cir., 12/12/17, 234 So.3d 978; sentence five years at hard labor and Ten Thousand Dollar fine. The facts: defendant hired victim to do contractor work. Defendant paid victim with a check. The victim tried to cash the check but bank denied, um, due to insufficient funds. Victim followed defendant in his vehicle to discuss the bounced check. Defendant pulled over and victim pulled over behind defendant. Defendant exited his truck and approached victim's vehicle. Defendant opened victim's vehicle and plus, placed a gun in his side. A verbal argument ensued. Defendant cocked the weapon during the argument. In sentencing the defendant, the trial judge cited defendant's failure to accept responsibility for his actions, the violent and senseless nature of the crime and the use of a dangerous weapon in the commission of the crime. Further, the judge expressed her belief that if the sentence was suspended or probated, there was undue risk that during the period of suspended sentence or probation, the defendant would reoffend. The judge opined the defendant would not likely respond affirmatively to probation, that he was in need of correctional treatment in a custodial environment which would be best, um, which would be best be provided by a commitment to an institution and that a lesser sentence would deprecate the seriousness of the offense. All right. Okay.

Louisiana Code of Criminal Procedure Article 881.1(E) states:

> Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

Accordingly, Defendant could be precluded from appealing his sentence. However, in *State v. Samuel*, 19-408, pp. 18-20 (La.App. 3 Cir. 2/5/20), 291 So.3d 256, 268-69, *writ denied*, 20-398 (La. 7/24/20), 299 So.3d 77, this court noted:

> This court has, however, previously reviewed claims of excessiveness where no motion to reconsider sentence was filed or objection made, performing a bare excessiveness review. *See State v. Debarge*, 17-670 (La.App. 3 Cir. 2/7/18), 238 So.3d 491; *State v. Price*, 16-899 (La.App. 3 Cir. 4/5/17), 216 So.3d 304; *State v. Soriano*, 15-1006 (La.App. 3 Cir. 6/1/16), 192 So.3d 899, *writ denied*, 16-1523 (La. 6/5/17), 219 So.3d 1111; *State v. Jackson*, 14-9 (La.App. 3 Cir. 6/18/14), 146 So.3d 631, *writ denied*, 14-1544 (La. 2/27/15), 159 So.3d 1066.
>
> Louisiana courts have laid out the following guidelines with regard to excessive sentence review:

10

Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99), 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00), 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La.6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge

> "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, 958[, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996)].

*State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06 (alteration in the original), *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261. Because Defendant failed to file a motion to reconsider sentence, we will review Defendant's claim as a bare excessiveness claim.

We find that the trial court's imposition of a mid-range six-year sentence is not excessive in this case. Defendant has had a number of arrests involving crimes against the person and involving weapons. As noted by the trial court, in *Brown*, 234 So.3d 978, the defendant was sentenced to five years at hard labor and a $10,000.00 fine was imposed. We find the facts in this case are similar to *Brown* in that Defendant had a gun pointed at the victim within close range of the victim's body during a verbal argument. Defendant held a gun up to Ms. Humphrey's head and threatened to shoot her and also to shoot the car in which she and Ms. Gentle were riding. Neither the victim nor Ms. Gentle threatened Defendant in any way, and he acknowledged no wrongdoing and expressed no remorse for his actions. Under these circumstances, we find that the six-year sentence is not excessive and thus, we hereby affirm the trial court's sentence.

**DECREE:**

For these reasons, we hereby affirm Defendant's conviction and sentence. However, we vacate that portion of Defendant's sentence requiring him to serve one year in default of payment of the fine.

**CONVICTION AFFIRMED; SENTENCE AFFIRMED IN PART AND VACATED IN PART.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3